**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| JAGGER HARDY, ANDREW MONTEMAYOR, NANCY PICKETT, GERI DARROW, and LUIS VITERI, *individually and on behalf of all others similarly situated*,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., *et al.*,<br><br>  *Defendants*. | HONORABLE KAREN M. WILLIAMS<br><br>Civ. No. 24-8251 (KMW) (SAK)<br><br><br><br>**OPINION** |

APPEARANCES:

Natalie Lesser, Esq.
Russell D. Paul, Esq.
Amey J. Park, Esq.
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Abigail J. Gertner, Esq.
Tarek H. Zohdy, Esq.
Cody R. Padgett, Esq.
Laura E. Goolsby, Esq.
Nathan N. Kiyam, Esq.
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067

*Attorneys for Plaintiffs and the Proposed Classes*

Tiffany M. Alexander, Esq.
Terri. S. Reiskin, Esq.
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1000 WESTLAKES DR., SUITE 275
BERWYN, PA 19312

*Attorneys for Defendant Volkswagen Group of America, Inc.*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Before the Court is Defendant Volkswagen Group of America, Inc.'s ("VWGoA") motion to dismiss Plaintiffs Jagger Hardy, Andrew Montemayor, Nancy Pickett, Geri Darrow, and Luis Viteri's (collectively, "Plaintiffs") Complaint. (ECF No. 28-1, "MTD Br.") Plaintiffs filed a brief in opposition. (ECF No. 32, "Opp.") VWGoA filed a reply. (ECF No. 37, "Reply.") The Court has reviewed Plaintiffs' Complaint and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, VWGoA's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## II.    FACTUAL BACKGROUND[1]

This putative class action arises from suction jet pump ("SJP") and fuel system defects (the "Defects") impacting certain Volkswagen and Audi vehicles. (Compl., ¶¶ 2-3.) Plaintiffs, who all purchased or leased vehicles of VWGoA or its subsidiaries, bring this action against Defendants VWGoA, Volkswagen AG, and Audi AG ("Defendants") on behalf of themselves and all those similarly situated. (*Id.* ¶¶ 1, 156-58.)

### a. The Individual Plaintiffs

All but one of the named Plaintiffs allege that they own Volkswagen Golf or Audi A3 vehicles and that after purchase they experienced problems which they attribute to the SJP and fuel system. Plaintiffs allege that the "Suction Pump Defect is inherent in each Class Vehicle and was present at the time of sale or lease." (*Id.* ¶ 6.) Plaintiff Jagger Hardy ("Hardy") alleges that in October 2014 he bought a new 2015 Volkswagen GTI SE from an authorized Volkswagen

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The facts are taken from Plaintiffs' Complaint.

dealership in Florida. (*Id.* ¶ 17.) Hardy alleges that he first began to smell gas in the cabin of his vehicle in 2017. (*Id.* ¶ 21.) In 2022, he experienced gas spillage while at a gas station and took his vehicle to a Volkswagen dealer, which replaced his fuel pump under warranty. (*Id.*) Hardy alleges that six months later he smelled gas again, but the dealership told him that there was nothing wrong and that his warranty coverage had ended. (*Id.* ¶¶ 21–22.)

Plaintiff Viteri ("Viteri") alleges he bought a new 2015 Volkswagen Golf from an authorized Volkswagen dealership in New Jersey in November 2015. (*Id.* ¶ 52.) In 2019, Viteri began to smell gas from inside the vehicle's cabin, so he took the vehicle to an authorized Volkswagen dealership. The dealership "quoted him $3,900 for this repair," which he had the dealership perform. (*Id.* ¶ 56.) Viteri alleges that "the cabin of the vehicle still smells strongly of gas." (*Id.*)

Plaintiff Andrew Montemayor ("Montemayor") alleges he bought a new 2016 Audi A3 from an authorized Audi dealership in Hawaii in July 2016. (*Id.* ¶ 26.) Eight years later, in March 2024, Montemayor alleges he began to experience fuel spilling out when he attempted to fill his gas tank and smelled gas in the cabin. (*Id.* ¶ 30.) Montemayor spoke with a "representative at an Audi corporate office" as well as with the dealership, and "was told that there is no remedy and that they do not know when they will have one." (*Id.*) Montemayor took his vehicle to "an independent repair shop" which "replaced the suction jet pump and performed [evaporative emissions ("EVAP")] repairs." (*Id.*) In June 2024, Montemayor took his vehicle to an authorized Audi dealership to have Recall 20YF completed, but was told it was not yet available. (*Id.* ¶ 31.) Montemayor alleges that his vehicle has not been permanently repaired and continues to be defective. (*Id.*)

Plaintiff Geri Darrow ("Darrow") alleges she bought a used 2019 Volkswagen GTI from a Nissan dealership in Connecticut in January 2023. (*Id.* ¶ 44.) In August 2023, Darrow noticed that her vehicle "was consuming gasoline at a fast rate" and began "to smell gas in and around the vehicle, and in the vehicle's oil." (*Id.* ¶ 48.) She took it to an authorized Volkswagen dealership in Connecticut, which replaced "the water pump and thermostat." (*Id.*) Darrow alleges that her vehicle "has not been permanently repaired and continues to be defective." (*Id.*)

Plaintiff Nancy Pickett ("Pickett") alleges she bought a new 2022 Volkswagen Taos from an authorized Volkswagen dealership in Missouri in January 2022. (*Id.* ¶ 35.) In April 2022, her "fuel gauge began to malfunction" and a Volkswagen dealer told her there was a "malfunction in the electric fuel pump" which was replaced along with unidentified "other components." (*Id.* ¶ 39.) Pickett alleges that in September 2023 the fuel gauge again malfunctioned, and the check engine light came on, so the dealer replaced the "fuel tank assembly and leak diagnosis pump." (*Id.*) In November 2023, the vehicle leaked fuel from the rear passenger side, stalled and would not restart, and smelled heavily of gas. (*Id.* ¶ 40.) After this problem, the "fuel line, fuel tank, and other components" were replaced. (*Id.*)

All Plaintiffs allege that "safety and reliability" were important to them. Before buying his vehicle, Hardy alleges that he reviewed "Consumer Reports safety ratings"; reviewed "television commercials and a magazine advertisement which described the vehicle"; reviewed the Monroney window sticker and warranty documents; and discussed the vehicle with an authorized Volkswagen dealership representative" and test-drove it. (*Id.* ¶ 19.) Montemayor alleges he "researched the vehicle," "reviewed the Monroney window sticker and handbook," and discussed the vehicle with an authorized Volkswagen dealership representative. (*Id.* ¶ 28.) Viteri alleges he reviewed the Monroney window sticker and discussed the vehicle with an authorized Volkswagen dealership

representative. (*Id.* ¶ 54.) Darrow alleges she reviewed the vehicle's Carfax report, viewed "online and Television advertising for the vehicle," and test-drove it. (*Id.* ¶ 46.) Pickett alleges she reviewed the vehicle's Monroney window sticker and discussed the vehicle with an authorized Volkswagen dealership representative. (*Id.* ¶ 37.)

Plaintiffs allege that the Defects are likely the result of:  (1) "inadequately designed, manufactured, or installed seals in the suction jet pump"; (2) "the use of inadequate materials in the suction jet pump which begin to degrade from the moment the pump is exposed to fuel"; (3) "improper design of the gas tank and/or the suction jet pump"; and/or (4) "improper design of the fuel system itself." (*Id.* ¶ 3.) Plaintiffs allege that the Defects increase the risk of fire and interfere with the ability of the engine to receive fuel. (*Id.*) Specifically, the defective suction jet pumps have a high risk of failure and increase the risk of fuel egress from the fuel tank to the EVAP system, which can cause fuel leaks both outside the vehicle and into the rear vehicle cabin. (*Id.* ¶¶ 80-81.) As a result of the Defects, Plaintiffs and Class Members allege that they "experience fuel leaks, premature fuel nozzle shutoffs due to the built-up pressure in the gas tank from remaining evaporated fuel and emissions, inability to fill up, hissing noises when the gas tank cap is unscrewed, fuel spillbacks, and/or gas odor inside their vehicles." (*Id.* ¶ 81.)

**b. The Recalls**

The Complaint details two recalls applicable to the SJP in the Volkswagen Golf and Audi A3 vehicles in the putative class, the most recent of which is ongoing. (*See id.* ¶¶ 109-18.) The first recall in September 2016 involved certain 2015-2016 Audi A3, Volkswagen Golf and GTI vehicles and called for replacement of the SJP inside the fuel tank that "may be compromised resulting in fuel flowing directly into the EVAP system." (*Id.* ¶ 109.) The second recall, which covers all the front-wheel-drive Class Vehicles except the Taos, was issued on February 14, 2024,

and related to the manufacturing process associate with a specific seal inside an affected suction jet pump that could permit fuel to "flow directly into the evaporative emissions" system which could result in a "leak through the charcoal cannister filter element." (*Id.* ¶ 114.) An interim recall notice sent to consumers in April 2024 advised that a "recall repair is not yet available" but advised that if the recall condition exists in a vehicle, "you could experience refueling issues (early stopping fuel nozzles, spillback) when fuel has accumulated in the EVAP system. A foul odor may also be noticed by vehicle occupants." (*Id.* ¶ 116.) The recall documents on the website of the National Highway Traffic Safety Administration ("NHTSA"), of which the Court takes judicial notice, provide additional detail. (*See* Declaration of Peter Green ("Green Decl."), ECF No. 28-2.)

The Part 573 Safety Defect Report filed with NHTSA in September 2016 regarding the problem with SJP 1.0, (*id.*, Ex. A, ECF No. 28-3), reflects that the first field failures were reported in July/August 2015 and were traced later that year to an "automatic assembly process" at the supplier that was "possibly pre-damaging seal rings." (*Id.* at 3.) The recall remedy was to replace the suction pump inside the fuel tank with a new version manufactured using "careful manual assembly." (*Id.*) Production Volkswagen vehicles were equipped with the improved SJP (Version 1.1) beginning in March 2016, and Audi vehicles beginning in February 2016. (*Id.*) In the fall of 2022, VWGoA extended the warranty coverage for the SJP to 15 years or 150,000 miles, whichever occurs first, from the original in-service date. (*See id.*, Exs. F and G, ECF Nos. 28-8 and -9.) This warranty extensions covered 2015-2020 Golf and Audi A3 vehicles that are included in the putative Class. (*Id.*) In December 2023, NHTSA opened a Recall Query (RQ230-07) to evaluate the remedy effectiveness and scope of the 2016 recall. (*See* ECF No. 28-14 (Opening Resume).)

In February 2024, VWGoA issued a new and superseding recall that expanded the scope of the covered vehicles to include certain model year 2015-2020 Volkswagen Golf and Golf GTI vehicles and 2015-2020 Audi A3 vehicles, including those previously repaired under the 2016 recall. (*See* Green Decl., Ex. B, ECF No. 28-4.) The remedy is a new and improved version of the SJP, Version 2.0, including "multiple changes/improvements." (*Id.* at 7.) For all covered vehicles (which exclude all-wheel drive and others that do not have the SJP 1.0 or 1.1), the recall provided SJP 2.0 free of charge, including for vehicles that had already been repaired under the first recall. (*Id.*) The recall also provides reimbursement for out-of-pocket expenses. The Closing Resume states that owners were notified of the recall in April 2024 and the remedy was expected to be available in August 2024. (*See* ECF No. 28-15.) Remedy parts became available in August 2024 as expected. (*See* Green Decl. at ¶ 6, Exs. C, D, and E.)

### c.  VWGoA's Knowledge, Misrepresentations, Omissions, and Duty to Disclose

Plaintiffs allege that VWGoA knew of the existence and severity of the Defects as early as 2015, but failed to disclose them and instead, touted the quality, durability, reliability, and performance of the Class. (*Id.* ¶¶ 7, 123-127.) Plaintiffs allege that VWGoA's knowledge was based on, and evidenced by, multiple sources including, *inter alia*, the issuance of two Safety Recall Reports: one on September 2, 2016, and the other February 14, 2024, recalling certain vehicles including the Class Vehicles in connection with the Defects. (*Id.* ¶¶ 109-118.) Accordingly, VWGoA became aware of the SJP defect when VWGoA initiated investigations prior to and in connection with these recalls and related customer satisfaction programs, service actions, and other remedial attempts and communications related to and/or prior to the second recall. (*Id.*) Plaintiffs allege that despite VWGoA's knowledge of the Defects in the Class Vehicles, VWGoA actively concealed, and continues to conceal, the existence and nature of the Defects. Because

VWGoA concealed and failed to disclose the Defects through VWGoA's unfair, deceptive, and fraudulent business practices, Plaintiffs have suffered and continue to suffer substantial damages, including having purchased Class Vehicles they would not have otherwise purchased, or would have purchased for less, had they known of the Defect. (*See, e.g.*, ¶¶ 11, 20, 23, 29, 31-32, 38, 41, 47, 49, 54, 56-57.)

### d. Plaintiffs' Complaint and the Instant Motion

On behalf of themselves and the five state subclasses (Connecticut, Florida, New Jersey, Missouri, and Hawaii), Plaintiffs assert the same three claims under each state's laws: breach of express warranty stemming from their respective New Vehicle Limited Warranties ("NVLWs"); breach of the implied warranty of merchantability; and violation of the respective state's consumer protection statute—the Connecticut Unlawful Trade Practices Act ("CUTPA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the New Jersey Consumer Fraud Act ("NJCFA"), the Missouri Merchandising Practices Act ("MMPA"), and the Hawaii Deceptive Trade Practices Act ("UDAP"). (Compl., ¶¶ 168–440 (Counts I-XV).)

Plaintiffs also purport to represent a nationwide class (or state sub-classes in the alternative) for violation of the Magnuson-Moss Warranty Act ("MMWA") (Count XVI), unjust enrichment (Counts XVII and XIX), and common-law fraud by omission or fraudulent concealment (Count XVIII). (*Id.* ¶¶ 441-83.) The named defendants are VWGoA and two German entities, Volkswagen AG and Audi AG. (*Id.* ¶ 1.) Plaintiffs seek a mix of legal and equitable relief depending on the claim. (*Id.* ¶¶ 186, 203, 222, 452, 471, "Prayer for Relief".) The equitable relief they seek includes an injunction to compel defendants "to issue a voluntary recall for the Class Vehicles," "to repair and eliminate the Suction Pump Defect from every Class Vehicle," to "reform their warranty" to "cover the injury alleged and to notify all Class members that such warranty has been reformed,"

and a declaration that Defendants "are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles." (*Id.* "Prayer for Relief" at (B), (C), (F).)

### III.    <u>LEGAL STANDARD</u>

#### A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F.Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, one exception is that courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date,

10

time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### C. Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may be raised at any time. *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *2 (D.N.J. Mar. 31, 2008). Challenges to a court's subject matter jurisdiction are considered "factual attack[s]." *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (contrasting to a Rule 12(b)(6) challenge, which attacks the facial plausibility of a complaint). "Because at issue in a factual 12(b)(1) motion is the trial court's . . . power to hear the case[,] . . . the trial court is free to weigh the evidence . . . [and] no presumptive truthfulness attaches to plaintiff's allegations . . . ." *Id.*

A motion to dismiss for lack of standing is "property brought pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1)." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (cleaned up). "Article III governs constitutional standing and limits [federal courts'] jurisdiction to actual cases or controversies." *Neal v. Volvo Cars of North Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015) (internal quotation marks omitted). A plaintiff can establish that their case presents a controversy, and, consequently, that they have standing, by demonstrating: (1) an injury in fact, (2) a sufficient causal connection between the injury claimed and the conduct complained of, and

(3) a likelihood that a favorable decision would redress the party's complained-of injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## IV.    DISCUSSION

### a.  Nationwide Class Claims

#### i.  *Prudential Mootness*

Defendants argue that Plaintiffs' claims are barred by the doctrine of prudential mootness. (MTD Br. at 12.) "There exist two categories of mootness: Article III mootness and prudential mootness." *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170, 172 (3d Cir. 2008). "Under the prudential mootness doctrine," a court "may decline to exercise [its] discretion to grant declaratory or injunctive relief if the controversy is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id.* Typically, "[t]he central question in a prudential mootness analysis is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* at 172–73.

"Courts have routinely declined to apply [the] doctrine [of prudential mootness] where plaintiffs seek not just equitable relief, but legal relief that exceeds what defendants were offering through a recall." *Davis v. BMW of N. Am., LLC*, 2022 WL 3646571, at *3 (D.N.J. Aug. 23, 2022); *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *36 (D.N.J. Mar. 10, 2022) ("[T]he prudential mootness doctrine does not confer discretion on the Court to dismiss legal claims. . . . only . . . equitable remedies."); *Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043, at *5 (D.N.J. Oct. 19, 2022) (finding "application of the prudential mootness doctrine, even in the context of a facial attack, is not appropriate where legal relief is sought that exceeds the relief provided through a recall."); *Rose v. Ferrari N. Am., Inc.*, 2022 WL 14558880, at *3 (D.N.J. Oct. 25, 2022) (same).

Here, while VWGoA asserts that all of Plaintiffs' legal damages are covered by its recalls, Plaintiffs allege damages beyond VWGoA's recalls, pleading defects not only with the SJP, but with the fuel tank, related components that include, *inter alia*, "various connector hoses and lines," "the fuel injector," "various leak detection pumps and sensors, connector lines/hoses, and a vapor canister," as well as the "improper design of the fuel system itself." (Compl., ¶¶ 3, 7, 71, 77, 79.) Whether the defects were indeed broader than the recalls is not a question appropriate for resolution at the pleading stage, where the Court must accept as true Plaintiffs' well plead allegations. *See Phillips*, 515 F.3d at 228. Thus, the Court lacks discretion to dismiss Plaintiffs' legal claims under the doctrine of prudential mootness. *See, e.g.*, *Cohen*, 2022 WL 721307, at *36; *Davis*, 2022 WL 3646571, at *3.

### ii. *Plaintiffs' Class Claims Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303, et seq. (Count XVI)*

Defendants seek dismissal of Plaintiffs' nationwide class action claim pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2303, for lack of subject-matter jurisdiction. (MTD Br. at 17.)

The express terms of the MMWA provide that a putative class action requires the complaint to include 100 named plaintiffs. 15 U.S.C. § 2310(d)(3)(C); *see Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182–83 (3d Cir. 2023); *see also Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) ("The text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs."); *McMahon v. Volkswagen Aktiengesellschaft*, No. 22-cv-1537, 2023 WL 4045156, at *9 (D.N.J. June 16, 2023) (observing that "every court in this District to address *Floyd* has followed its reasoning" and finding that the court lacked "jurisdiction over the MMWA claims because there are less than 100 named Plaintiffs").

13

Here, Plaintiffs' Complaint includes five named plaintiffs. (*See generally* Compl.) Plaintiffs raise several arguments as to why their individual MMWA claims should survive, *i.e.*, that the Court maintains subject-matter jurisdiction based on diversity jurisdiction, and that *Rowland* permitted the Court to exercise supplemental jurisdiction over individual MMWA claims in the absence of 100 named plaintiffs. (Opp. at 10-12.) None of these arguments address the express requirements for a nationwide class action MMWA claim. *See* 15 U.S.C. § 2310(d)(3)(C). Accordingly, the Court will dismiss without prejudice Plaintiffs' nationwide class action claim under the MMWA alleged in Count XVI of the Complaint for lack of subject-matter jurisdiction.

### iii. *Plaintiffs' Claims on Behalf of Consumers from Other States*

Defendants further argue that Plaintiffs lack Article III standing to bring state-specific claims on behalf of unnamed plaintiffs from states other than those where the named Plaintiffs purchased their vehicles. (MTD Br. at 17-18.) Plaintiffs rely on *Back2Health Chiropractic Center, LLC v. Sentinel Insurance Co.*, 2021 WL 960875 (D.N.J. Mar. 15, 2021) for the proposition that they have standing to represent class members in other states. (Opp. at 12–13.)

"[T]here is disagreement in this district over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states." *Rains v. Jaguar Land Rover N. Am., LLC*, No. 22-4370, 2023 WL 6234411, at *4 (D.N.J. Sept. 26, 2023) (quoting *Cohen*, 2022 WL 721307, at *7). "There is a fairly even split of authority among the cases that have previously been confronted with this issue, and there is no binding Third Circuit precedent directly on point." *Snowdy v. Mercedes-Benz USA, LLC*, No. CV 23-1681, 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024).

The Third Circuit has held that "[a] plaintiff must 'demonstrate standing for each claim he seeks to press.'" *Long v. SEPTA*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale v. Volvo Cars of*

14

*N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015)). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citation omitted); *see also Long*, 903 F.3d at 325 ("[A]ny harm to unnamed class members cannot constitute injury in fact."). Otherwise, "a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *Ponzio v. Mercedes-Benz, USA, LLC*, 447 F.Supp. 3d 194, 223 (D.N.J. 2020). "Following the general principles of Article III, Plaintiffs have standing to assert violations of state laws in the [five] states where a named Plaintiff suffered an alleged injury in fact." *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at *8 (D.N.J. Oct. 19, 2023). "The requirements for standing do not change because Plaintiffs fashion their claims in a purported nationwide class." *Id.*

Here, this Court agrees with the foregoing authorities requiring Plaintiffs to demonstrate standing for each claim they seek to press, which is consistent with principles of Article III. "Therefore, Plaintiffs are limited to asserting claims on behalf of individuals in states where at least one named Plaintiff has standing to assert a claim." *Rose*, 2022 WL 14558880, at *3. Accordingly, Plaintiffs' claims asserted on behalf of the nationwide class are dismissed without prejudice.

### b. Injunctive Relief

VWGoA asks the Court to dismiss Plaintiffs' claims for injunctive relief because Plaintiffs do not face a sufficiently real threat of immediate injury. (MTD Br. at 18-19.) VWGoA relies on

*Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-10546, 2023 WL 3271116 (D.N.J. May 4, 2023).
In *Reiger*, the court found that the plaintiffs were not at "real and immediate risk of purchasing
new class vehicles from [Volkswagen] despite the lengths at which they have gone through in
alleging [Volkswagen's] unfair and deceptive practices. Their request for injunctive relief therefore
'amounts to a "'stop me before I buy again' claim" that precludes Article III standing.'" *Id.* at *6
(quoting *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020)).

Here, Plaintiffs seek injunctive relief: (1) "to compel Defendants to offer, under warranty,
remediation solutions that Defendants identifies"; (2) "enjoining Defendants from further
deceptive distribution, sales, and lease practices with respect to Class Vehicles"; (3) "enjoining
Defendants from selling the Class Vehicles with the misleading information"; (4) "compelling
Defendants to provide Class Members with replacement components that do not contain the
defects alleged herein"; and/or (5) "compelling Defendants to reform its warranty, in a manner
deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members
that such warranty has been reformed." (Compl., ¶ 461.) The rationale of *Reiger* applies to
Plaintiffs' request for injunctive relief relating to their "deceptive distribution, sales, and lease
practices" and "misleading information" because Plaintiffs allege that they "will not purchase or
lease another Class Vehicle." (*Id.* ¶¶ 23, 32, 41, 49, 461.) Thus, as in *Reiger*, Plaintiffs "have
committed themselves to avoiding the future injury they plead." 2023 WL 3271116, at *6.

Notably, *Reiger's* foregoing findings were limited to the issue before the Court "to the
extent that Plaintiffs [sought] to enjoin [VWGoA] as to its sales and advertising practices," because
the defendant's motion did not address the plaintiffs' request for an injunction to repair and/or
replace the defective components and other relief sought. 2023 WL 3271116, at *6 n.3. Here,
unlike *Reiger*, VWGoA also seek dismissal of Plaintiffs' requests to compel Defendants to remedy

the alleged defects with their vehicles, arguing that "there is no threat of future injury" because "the recalls and existing warranty extensions already provide the requested relief (*e.g.*, recall, repair, and elimination of the SJP defect, reformation of the warranty)." (*See* Reply at 8.)

Consistent with the Court's earlier finding that Plaintiffs have adequately plead that their damages are broader than the scope of VWGoA's recalls, however, the Court finds Plaintiffs have adequately alleged standing to seek injunctive relief with respect to Plaintiffs' requests to compel Defendants to offer "remediation solutions" to their alleged defects, provide "replacement components" that do not contain the alleged defects, and reform the warranty "to cover the injury alleged." (*See* Compl., ¶ 461.) This is because if Plaintiffs are ultimately correct that the recalls are insufficient to remedy the damages alleged, Plaintiffs will likely continue to be injured by the alleged defects absent the grant of injunctive relief.

### c.  Shotgun Pleadings

VWGoA asserts that this Court must dismiss Plaintiffs' Complaint in its entirety on the grounds that it is an "impermissible shotgun pleading" because it "adopts all of the preceding allegations" to support each count and "fails to specify which of the defendants are responsible for which acts or omissions." (MTD Br. at 19-20 (quoting *Foulke v. Twp. of Cherry Hill*, No. 23-2543, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024)).)

The four kinds of shotgun pleadings are those that: (1) "contain multiple counts where each count adopts the allegations of all preceding counts"; (2) are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) "do not separate each cause of action or claim for relief into its own distinct count"; and (4) "assert multiple claims against multiple defendants without specifying which of them are responsible for which acts or omissions." *Patrick v. Equifax Info. Servs., LLC*, No. 23-4092, 2024 WL 2077036, at *4

(D.N.J. May 9, 2024). Shotgun pleadings "all have in common one thing: failure to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Contrary to VWGoA's assertions, the Court finds that Plaintiffs have distinguished their claims against different Defendants. Plaintiffs bring their express warranty counts solely against VWGoA and specifically reference VWGoA's express warranty terms. (*See, e.g.*, Compl., ¶¶ 169, 174-175.) Plaintiffs indeed assert their implied warranty claims against all Defendants arising from the alleged unmerchantability of the Class Vehicles' "fuel tanks, suction jet pumps, and related components suffered from an inherent defect at the time of sale and thereafter [which] are not fit for their particular purpose of providing safe and reliable transportation." (*See, e.g.*, *id.*, ¶¶ 188, 193.) Similarly, Plaintiffs assert consumer statutory claims against all Defendants aimed at Defendants' misrepresentations and failure to disclose Defendants' pre-sale knowledge of a serious, latent defect to Plaintiffs. (*See, e.g.*, *id.*, ¶¶ 209-216). However, courts in this district have long recognized the "relaxed" need to distinguish roles and functions of related defendants' pre-discovery because such information is peculiarly within the defendants' knowledge. *See Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *15 (D.N.J. Aug. 29, 2018). To this end, Plaintiffs have specifically alleged the various functions that Defendants are alleged to have performed, (*see* Compl., ¶¶ 60-66), and "which of them are responsible for which acts or omissions," *see Patrick*, 2024 WL 2077036, at *4, sufficient to meet the relaxed standard for inter-related entities. *See Kearney*, 2018 WL 4144683, at *15.

Moreover, VWGoA's assertion that this is a shotgun pleading is undermined by its failure to move for a more definite statement pursuant to Rule 12(e) and by its present motion to dismiss pursuant to Rule 12(b)(6) substantively attacking the merits of Plaintiffs' claims. *See Patrick*, 2024

WL 2077036, at *5. As the Court held in *Patrick*, "at this juncture, Plaintiff requires discovery to ascertain the specific facts related to his causes of action. Thus, it would be inappropriate for the Court to deny an amendment for grouping the Defendants where, as here, Plaintiff alleges that . . . Defendants violated the same law in the same general manner, and Defendants are in a better position to trace specific conduct back to an individual actor." *Id.*

Accordingly, the Court denies VWGoA's request to dismiss the Complaint in its entirety on the grounds that it is an impermissible shotgun pleading.

### d.  Plaintiffs' Fraud-Based Claims

#### i.  *Statute of Limitations*

##### 1.  <u>Hardy's Statutory and Common Law Fraud Claims</u>

###### a.  Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201-.213 (Count VI)

Hardy asserts Count VI against all Defendants for an alleged violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A. §§ 501.201-.213. (Compl., ¶¶ 261-279.) VWGoA argues that Hardy's claim is time-barred because claims pursuant to the FDUTPA accrue at the time of purchase and equitable tolling does not apply. (MTD Br. at 20-21.) Plaintiffs argue that Hardy's FDUTPA claim is equitably tolled because Hardy's damages began in 2022, when gas spilled from his tank upon fueling. (Opp. at 18-19.)

FDUTPA claims are subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(e). Florida courts have held that a "FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect." *Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, No. 14-20107, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014). Contrary to Plaintiffs' assertions, "[i]t is well-settled there is no 'delayed discovery rule' applicable to FDUTPA claims." *Id.* Here, Plaintiffs allege that Hardy purchased his vehicle in October 2014. (Compl., ¶ 17). Accordingly,

Hardy's FDUTPA claim is barred by the statute of limitations and as such, the Court will dismiss Count VI with prejudice.

### b.  Hardy's Common Law Fraud Claim (Count XVIII)

Hardy also asserts a common law claim for fraudulent concealment against Defendants. (Compl., ¶¶ 462-71.) VWGoA acknowledges that Florida law permits application of the delayed discovery doctrine but argues that Hardy has insufficiently plead that he exercised due diligence upon first smelling gas in his vehicle in 2017. (MTD Br. at 20-21.)

The limitations period for common law fraud claims under Florida law begins when "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a). Here, while Plaintiffs allege that Hardy first experienced the defect in 2017 when he smelled gas in the cabin, the Complaint alleges that Hardy's damages began in 2022 when gas spilled from his tank at a gas station and he was forced to have his car towed to the Volkswagen dealership, where they replaced his fuel pump under warranty. (Compl., ¶ 21.) Plaintiffs allege that six months after the repairs, after his warranty expired, Hardy again smelled gas within his cabin and took his car to an authorized Volkswagen dealership, which told him there was nothing wrong with his vehicle. (*Id.*) Thus, the Court finds that Plaintiffs have adequately plead that Hardy exercised due diligence to discover the defect upon the first alleged instance of damage and repairs to his vehicle in 2022, when the statute of limitations began to run.

Accordingly, Hardy's common law fraud claims are not barred by the statute of limitations.

## 2. Montemayor's Hawaii Deceptive Trade Practices Act Claims, HAWAII REV. STAT. §§ 480, et seq. (Count XV) and Common Law Fraud Claims (Count XVIII)

VWGoA argues that Montemayor's claims are barred by the statute of limitations because he has not sufficiently plead a continuing violation existed, and that the doctrine does not apply to a single vehicle purchase as a matter of law. (*See* MTD Reply at 11.) VWGoA further argues that its first recall put Montemayor on notice of the alleged defects, such that the statute of limitations period began to run in 2016. (*Id.*)

Hawaii Deceptive Trade Practices Act Claims are subject to a four-year statute of limitations. Haw. Rev. Stat. § 480-24. "[A] cause of action for a continuing violation is deemed to accrue at any time during the period of the violation." *Id.* Here, Plaintiffs vigorously maintain that their issues were broader than the SJP recalls, pleading defects not only with the suction jet pump, but fuel tank, related components which include, *inter alia*, various connector hoses and lines, . . . the fuel injector," "various leak detection pumps and sensors, connector lines/hoses, and a vapor canister (also known as a charcoal filter or canister), as well as the "improper design of the fuel system itself." (Compl., ¶¶ 3, 4, 7, 71, 77, 79.) Plaintiffs allege that Defendants have and continue to conceal the extent and nature of these defects. (*Id.* ¶¶ 7, 11, 98, 100, 120, 130, 149-152, 155, 469.) These allegations belie VWGoA's assertions that Montemayor has not plead a continuing violation. Moreover, VWGoA fails to elaborate on how the recalls would put Montemayor on notice of defects broader than the issues identified in those recalls. Whether the defects were indeed broader than the recalls or Defendants' knowledge of those defects is not a question appropriate for resolution at the pleading stage, where the Court must accept as true Plaintiffs' well plead allegations. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

Accordingly, because Montemayor alleges that he first discovered the alleged defect in 2024 when fuel poured out of his fuel tank, (Compl., ¶¶ 25-31), the Court finds that Montemayor's fraud claims are not barred by the statute of limitations.

### 3. **Plaintiffs adequately allege tolling**

VWGoA argues, more broadly, that Plaintiffs have inadequately plead tolling of the statutes of limitations for New Jersey, Florida, and Hawaii and the exercise of due diligence because Plaintiffs acknowledge that a public recall was issued in 2016. (MTD Br. at 22-23.) However, as previously stated, Plaintiffs maintain that the defects were broader than the SJP issues covered by the recalls, and that Defendants actively concealed and failed to disclose the extent and nature of those defects. (*See* Compl., ¶¶ 3, 4, 7, 11, 71, 77, 79, 98, 100, 120, 130, 149-152, 155, 469.) Again, whether these defects actually existed is not a question for the pleading stage, where the Court must accept as true Plaintiffs' well plead allegations. *See Rocks*, 868 F.2d at 645. Moreover, Plaintiffs are unable to more specifically plead the details of Defendants' alleged concealment, *i.e.*, what Defendants knew about the alleged defects and when they knew it, without the benefit of discovery. *See Kearney*, 2018 WL 4144683, at *9; *Patrick*, 2024 WL 2077036, at *5 ("[A]t this juncture, Plaintiff requires discovery to ascertain the specific facts related to his causes of action.").

Furthermore, except for Hardy's FDUTPA claim, the applicable limitations period does not begin to run at the time of purchase, but when the defects were discovered or should have been discovered. *See, e.g.*, Fla. Stat. § 95.031(2)(a); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 425 (3rd Cir. 1999) (the New Jersey statute of limitations for fraudulent concealment begins to run on plaintiff's discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059-1060 (9th Cir. 2012) (holding that Hawaii's "statute of limitations may be

tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence.").

As previously stated, the Court finds that the 2016 recall did not put Plaintiffs on notice of alleged defects broader than the recall addressed. Each Plaintiff has adequately plead that they discovered the alleged defects within the limitations period: Hardy in 2022 when he had his car towed and repaired after gas spilled form his tank, (Compl., ¶ 21); Montemayor in 2024 when he first discovered fuel pouring out of his fuel tank, (*id.* ¶¶ 25-30); Viteri in 2019 when he took his vehicle to a Volkswagen authorized dealership where he was told the fuel pump needed to be replaced, (*id.* ¶¶ 51-56); *see* N.J.S.A. § 2A:14–1 (six-year statute of limitations); *S. Cross Overseas Agencies, Inc.*, 181 F.3d at 425.

Accordingly, the Court finds that the statute of limitations bars only Hardy's FDUTPA claims, and Plaintiffs have adequately plead tolling for the remaining statutes of limitations.

### ii.  *Duty to Disclose*

VWGoA argues that to sustain common law fraud-by-omission claims in the respective states at issue, and for fraud-based omission claims under the NJCFA and CUTPA, the defendant must have a duty to disclose the allegedly omitted information for liability to attach. (MTD Br. at 27-29.) VWGoA posits that such a duty arises only where there is a special relationship between the parties, which does not exist in the context of an arms-length purchase of a vehicle, and that Plaintiffs have failed to plausibly allege such a duty here. (*Id.* at 28.) Under the state consumer protection statutes and common law of every state at issue, a duty to disclose arises where a party makes a partial disclosure that omits material facts.

Under New Jersey law, a party generally "has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them, unless the

transaction itself is fiduciary in nature, or unless one party 'expressly reposes a trust and confidence in the other.'" *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (App. Div. 1998) (quoting *Berman v. Gurwicz*, 458 A.2d 1311, 1313 (N.J. Ch. Div. 1981)); *see Brown v. Hyundai Motor Am.*, No. 18-11249, 2019 WL 4126710, at *6 (D.N.J. Aug. 30, 2019) (noting duty to disclose must exist to support omission-based NJCFA claim); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F.Supp. 2d 537, 546 (D.N.J. 2013) (finding "a fraudulent omission under common law requires a duty to disclose."). Courts applying New Jersey law may imply that a duty to disclose exists if "such disclosure is necessary to make a previous statement true." *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 WL 1270958, at *8 (D.N.J. Mar. 18, 2015); *see also Schechter v. Hyundai Motor Am.*, No. 18-13634, 2020 WL 1528038, at *16 (D.N.J. Mar. 31, 2020) ("In addition, a plaintiff can assert an omission-based negligent misrepresentation claim in connection with a concealed defect 'when a [manufacturer] has made a partial disclosure.'" (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017)).

Hawaii also recognizes that a duty to disclose can arise from a partial disclosure that omits material facts. *Santiago v. Tanaka*, 137 Haw. 137, 149 (2016) ("A statement that is partial or incomplete may be a misrepresentation because it is misleading, when it purports to tell the whole truth and does not. . . . When such a statement has been made, there is a duty to disclose the additional information necessary to prevent it from misleading the recipient.") (quoting Restatement (Second) of Torts, § 551 cmt. G); *see also Au v. Au*, 63 Haw. 210, 217 (1981) (holding a duty to disclose arises where one "volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them.").

24

Florida law likewise imposes a duty to disclose on a defendant if that "defendant's failure to speak would render the defendant's own prior speech misleading or deceptive." *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 775811, at *4 (S.D. Fla. Feb. 27, 2017); *see also Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 840 (Fla. 2022) (holding "when a defendant makes a statement that purports to tell the whole truth but does not, 'there is a duty to disclose the additional information necessary to prevent it from misleading the recipient.'") (quoting Restatement (Second) of Torts, § 551 cmt. G).

Similarly, in Missouri, a "duty to disclose arises from a classical fiduciary relationship, from a partial disclosure of information, or from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose this knowledge." *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 580 (Mo. Ct. App. 2000); *see also Anderson v. Ford Motor Company*, 2017 WL 6733972, at *3 (W.D. Mo. Dec. 29, 2017) (superior knowledge not within a plaintiff's reach creates a duty to disclose).

In Connecticut, a duty to disclose can arise where a party makes a voluntary disclosure, where imposed by statute, regulation or common law, or where a special relationship gives rise to a fiduciary duty. *See Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 84 (2005); *DiMichele v. Perrella*, 158 Conn. App. 726, 731 (2015). "Under [Connecticut] common law, a duty to disclose 'is imposed on a party insofar as he voluntarily makes disclosure. A party who assumes to speak *must make a full and fair disclosure* as to the matters about which he assumes to speak.'" *Id.* (quoting *Roberts v. Paine*, 124 Conn. 170, 175 (1938)) (emphasis added). Under the CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42–110b(a). The Connecticut Supreme Court has held that an act or practice is unfair or deceptive if, *inter alia*, it is "considered unlawful

. . . as it has been established by . . . the common law, or otherwise . . . it is within at least the penumbra of some common law, statutory, or other established concept of unfairness." *Louis v. Stop & Shop Supermarket Co., LLC*, No. 106005408, 2011 WL 7029783, at *2 (Conn. Super. Ct. Dec. 23, 2011) (quoting *A–G Foods, Inc. v. Pepperidge Farm, Inc.,* 216 Conn. 200, 215 (1990)). Thus, under both the CUTPA and Connecticut common law, a duty to disclose arises where a party makes a partial disclosure that omits material facts.

Here, Plaintiffs allege that Defendants made partial statements that omitted material facts, including facts about the warranty coverage and inability to repair the Defects, (Compl., ¶¶ 5, 83-91); the SJP, fuel system, and related components (*id.*, ¶¶ 71-82); the vehicles' safety, reliability, and proper functioning, (*id.*, ¶¶ 16-58); the fuel systems' proper functioning in transferring fuel to the engine for combustion, (*id.*, ¶¶ 71-82); and the representations in the warranties to repair the Defects, when such repairs were not covered, (*id.*, ¶¶ 21-23, 31, 40, 48, 56). Thus, Plaintiffs have adequately alleged that Defendants had a duty to disclose arising from their partial statements regarding the functioning of the Class Vehicles and the scope of warranty coverage which omitted material facts regarding the defects and the limits of the applicable warranties and repairs.

### iii. *Presale Knowledge*

Next, VWGoA argues that Plaintiffs failed to plausibly allege "that VWGoA had knowledge of the claimed defect before the Plaintiffs bought their vehicles." (MTD Br. at 30.) In *Ponzio*, plaintiffs pleaded facts establishing that defendants had pre-sale knowledge of an alleged defect through "(1) pre-release design and testing; (2) technical service bulletin; (3) consumer complaints; and (4) warranty and paint replacement data." 447 F.Supp. 3d at 227. The district court "f[ound] that the totality of allegations pertaining to Defendants' knowledge of the alleged defect, collectively, [we]re sufficient to establish Defendants' had presale knowledge of the [] Defect." *Id.*

Here, Plaintiffs allege that VWGoA had pre-sale knowledge of the alleged defects through the 2016 Recall, including a "Chronology" wherein Defendants admit they were aware of the SJP defects as early as July/August 2015 when failures were reported. (Compl., ¶ 113.) Defendants argue that these facts cannot demonstrate VWGoA's pre-sale knowledge relating to Hardy because he purchased his vehicle in 2014, nor to Montemayor and Viteri because their vehicles were purchased prior to the 2016 Recall. (MTD Br. 30-31.) Yet Plaintiffs also allege that Defendants had pre-sale knowledge prior to the 2016 Recall through VWGoA's pre-production testing, pre- and post-production aggregate data analysis, warranty claims data, complaints submitted to the NHTSA, replacement part data, its own communications with dealerships about the Defect's symptoms, and early consumer complaints. (Compl., ¶¶ 99-104, 113.) Such allegations of pre-sale knowledge arising from pre-production and post-production testing, warranty claims data, and consumer complaints are routinely accepted as supporting the inference of presale knowledge. *See Ponzio*, 447 F.Supp. 3d at 227; *see also Rose v. Ferrari N. Am., Inc.*, No. 21-20772, 2024 WL 1209185, at *5–6 (D.N.J. Mar. 20, 2024) (finding pre-sale knowledge sufficiently plead where the plaintiffs alleged the defendant manufacturer through "numerous complaints submitted to the [NHTSA]; . . . warranty claims submitted to Ferrari's network of dealerships; [and] pre-production and post-production testing.").

VWGoA further argues that the foregoing allegations are "conclusory," claiming that they do not refer to the SJP specifically. (MTD Br. at 31.) But as Plaintiffs repeatedly emphasize, their alleged defects are broader than the SJP. (*See* Compl., ¶¶ 3, 4, 7, 71, 77, 79.) Moreover, while Rule 9(b) imposes a heightened pleading requirement for fraud claims, knowledge may be alleged generally. Fed. R. Civ. P. 9(b). ("[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Accordingly, Plaintiffs have plausibly alleged VWGoA's pre-sale knowledge of the alleged defects sufficient to survive the instant motion.

### iv.    Causation

Next, VWGoA argues that Plaintiff's fraud-based claims should be dismissed because they fail to adequately plead causation. (MTD Br. at 32-34.) VWGoA correctly observes that causation is an element of the consumer protection statutes and common law fraud-by-omission claims in each state at issue. *See, e.g., Allen v. Jacksonville Univ.*, No. 21-178, 2022 WL 17668615, at *14 (M.D. Fla. Dec. 14, 2022) (FDUTPA); *Bratton v. Hersey Co.*, No. 16-4322, 2018 WL 934899, at *2 (W.D. Mo. Feb. 16, 2018) (MMPA); *Nwachukwu v. Liberty Bank*, 257 F.Supp. 3d 280, 301 (D. Conn. 2017) (CUTPA); *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250, 2015 WL 3487756, at *4 (D.N.J. June 2, 2015) (NJCFA); *King v. Int'l Data Servs.*, No. 01-380, 2002 WL 32345923, at *7 (D. Haw. Aug. 5, 2002) (UDAP); *Hebrand v. Hebrand*, 284 A.3d 702, 710 (Conn. App. 2022) (fraud); *Bailey v. Covington*, 317 So. 3d 1223, 1227–28 (Fla. 3d DCA 2021) (fraud); *Miyashiro v. Roehrig, Roehrig, Wilson & Hara*, 228 P.3d 341, 362–63 (Haw. Ct. App. 2010) (fraud); *Zorba Contractors, Inc. v. Housing Auth., City of Newark*, 362 N.J. Super. 124, 139 (App. Div. 2003) (fraud); *Magna Bank v. W.P. Foods*, 926 S.W.2d 157, 162 (Mo. Ct. App. 1996) (fraud).

The Court is satisfied that Plaintiffs have sufficiently pled causation. As previously discussed, Plaintiffs have sufficiently plead that VWGoA had pre-sale knowledge of the defects alleged. Plaintiffs also plead that if VWGoA had disclosed the alleged defects, Plaintiffs would not have purchased the Class Vehicles or would have paid less for them. (*See* Compl., ¶¶ 12, 20, 29, 38, 47, 55, 91, 121, 129.) Moreover, Plaintiffs have sufficiently plead that VWGoA fraudulently concealed those defects. Courts have held that a plaintiff need not allege how the manufacturer should have conveyed the omitted information where the defendant had superior knowledge and

28

fraudulently concealed it. *See, e.g., In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *17 (applying New Jersey and Florida law); *DeFrank v. Samsung Elecs. Am., Inc.*, No. CV 19-21401, 2020 WL 6269277, at *7 (D.N.J. Oct. 26, 2020) (finding "plaintiffs need not identify 'specific samples of representations on which they relied which did *not* contain the allegedly omitted information," a standard which technically might encompass every statement of the defendants.'") (applying New Jersey and Florida law); *DiMichele*, 158 Conn. App. at 731; *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007). Hence, the Court finds that the Complaint contains ample allegations of the injury Plaintiffs sustained, and, more importantly, VWGoA's role in causing their injury.

Accordingly, the Court finds that Plaintiffs have sufficiently plead causation.

### v. Economic Loss Doctrine

VWGoA argues that the economic loss doctrine bars Plaintiffs' claims. (MTD Br. at 34-35.) "The economic loss doctrine generally holds that 'purely economic losses are not recoverable in tort.'" *Cohen*, 2022 WL 721307, at *31 (quoting *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-03095, 2021 WL 1207791, at *29 (D.N.J. Mar. 31, 2021)). New Jersey and Florida law "do not apply the economic loss doctrine to fraud-based claims when a plaintiff alleges fraudulent inducement or that the defendant violated an extrinsic duty." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *18; *see also Smith v. Citimortgage, Inc.*, 2015 WL 12734793, *7 (D.N.J. Dec. 22, 2015) (Linares, J.) (under New Jersey law, "fraud [based] claims that are extrinsic to the underlying contract, such as for fraudulent inducement, are not" barred by economic loss doctrine). The same principle applies in Connecticut, Hawaii, and Missouri. *See, e.g., Ulbrich v. Groth*, 310 Conn. 375, 404 (2013) (citing *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 579 (1995)); *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Haw. 214, 253,

948 P.2d 1055, 1094 (1997), *as amended* (Jan. 13, 2004); *Emerson Elec. Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12 n.4 (Mo. 2012) (citing *Autry Morlan Chevrolet Cadillac, Inc., v. RJF Agencies, Inc.,* 332 S.W.3d 184, 193 (Mo. App. 2010).

Here, Plaintiffs allege VWGoA had superior knowledge of the defects and induced them to purchase vehicles they otherwise would not have purchased by fraudulently concealing their knowledge of the defects. (*See* Compl., ¶¶ 12, 20, 29, 38, 47, 55, 91.) Such claims are clearly not in the nature of contract. Accordingly, the economic loss doctrine does not bar Plaintiffs' fraud-based claims.

### vi. *Pleading Sufficiency Pursuant to Rule 9(b)*

VWGoA argues that Counts III, VI, IX, XII, XV, and XVIII should all be dismissed because they lack the particularity required by Rule 9(b). (MTD Br. at 23-24.) *See* Fed. R. Civ. P. 9(b). VWGoA contends that Plaintiffs have failed to identify affirmative representations that constitute fraud, that Plaintiffs' representations regarding the warranty coverage are false because the recalls provided new SJPs, and that the Complaint does not adequately plead reliance on VWGoA's alleged fraud. (*Id.* at 23-27). First, as previously discussed, Plaintiff has sufficiently plead that VWGoA's partial representations that omitted material facts amounted to fraudulent concealment. Second, as found above, Plaintiffs allege with specificity defects broader than the SJP covers. Indeed, multiple Plaintiffs have taken advantage of the recalls and allege they still experience issues due to other defects in the fuel system. Thus, Plaintiffs' fraud claims based on VWGoA's representations regarding the scope of its express warranty coverage are sufficiently plead. Finally, the parties agree that reliance on an omission is a lower standard. (MTD Br. at 25-27; Opp. at 23-26); *see, e.g.*, *Kearney*, 2018 WL 4144683, at *15; *Patrick*, 2024 WL 2077036, at *4. Thus, Plaintiff's allegation that VWGoA was in a superior position of knowledge regarding the alleged

defects but fraudulently concealed that knowledge from Plaintiffs and their agents, *i.e.*, the dealerships, to induce Plaintiffs' purchase of the Class Vehicles, is plead with the particularity required by Rule 9(b).

### e.  Warranty Claims

#### i.  *Express Warranty Claims*

VWGoA argues that the Court should dismiss Plaintiffs' express warranty claims because its recalls provide a remedy to all damages alleged. As the Court previously found, Plaintiffs have sufficiently alleged defects broader than VWGoA's recalls covered. For example, the Complaint alleges that Hardy took his vehicle to the repair shop, which told him that there is no remedy for the issue he was experiencing. (Compl., ¶¶ 21-22.) Montemayor had recall repairs performed on his car, yet he was informed by Audi dealer personnel that Audi has no remedy available for the alleged defects. (*Id.* ¶¶ 30-33.) Pickett alleges that her car received recall repairs in 2023, but the defects were not permanently repaired. (*Id.* ¶ 40.) Darrow alleges that defects persisted after the dealership replaced the water pump and thermostat in his vehicle pursuant to the recall. (*Id.* ¶ 48.) And Viteri alleges he replaced the fuel pump and still experiences the symptoms of the defects. (*Id.* ¶ 56.) Whether Plaintiffs' contentions are right or wrong, the Court will not resolve these factual questions at the pleading stage.

VWGoA further argues that Plaintiffs' express warranty claims cannot be based on design defects because the pertinent warranties cover only repairs to correct a defect in manufacturer's material or workmanship. (MTD Br. at 36 (citing Green Decl. ¶¶ 9-12 and Ex. H at 3, Ex. I at 3, Ex. J at 8, and Ex. K at 7).) The Third Circuit has held that "a warranty that limits its coverage to defects in 'materials' and 'workmanship' does not, without more, apply to defects in 'design.'" *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019). The same is true in Connecticut, Florida,

31

Hawaii, and Missouri. *See, e.g., Rife v. Newell Brands, Inc.*, 632 F.Supp. 3d 1276, 1300 (S.D. Fla. 2022); *Napoli-Bosse v. GM LLC*, 453 F.Supp. 3d 536, 548 (D. Conn. 2020); *Secura Ins. Co. v. Deere & Co.*, 101 F.4th 983, 986–87 (8th Cir. 2024); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013); *Harman v. Taurus Int'l Mfg. Inc.*, No. 23-11235, 2024 WL 3860198, at *4 (11th Cir. Aug. 19, 2024) (per curiam).

Here, the Complaint alleges that the express warranty covered material or workmanship but does not allege that it covered design defects. (*See* Compl., ¶¶ 83-87.) While Plaintiffs argue that the issue of whether the express terms of the warranty include design defects should not be determined at the pleading stage, Plaintiffs cannot amend their Complaint in their opposition brief. *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Thus, the Court will **GRANT in part** VWGoA's motion to dismiss without prejudice Plaintiffs' express warranty claims only to the extent that they pertain to design defects. As VWGoA notes, individual MMWA claims rise and fall on underlying state warranty claims. (MTD Br. at 35 n. 13.) Because Plaintiffs' express warranty claims with respect to materials and workmanship will survive (Counts I, IV, VII, X, and XIII), so too do Plaintiffs' individual MMWA claims (Count XVI).

### ii.  *Implied Warranty Claims*

VWGoA argues that Hardy, Viteri, and Montemayor's implied warranty claims must be dismissed. (MTD Br. at 36-38.) VWGoA argues that the Florida, New Jersey, and Hawaii statute of limitations for implied warranty claims bar their respective implied warranty claims. (*Id.* at 37.)

### 1.  <u>Viteri and the New Jersey Subclass</u>

VWGoA argues that the applicable statute of limitations in New Jersey is four years and "begins to run from the date of purchase regardless of the plaintiff's lack of knowledge of the

alleged breach." (MTD Br. at 37 (quoting N.J.S.A. 12A:2-725).) However, under New Jersey law, "[t]he statute of limitations for an implied warranty claim can be tolled if a plaintiff demonstrates that defendant engaged in some form of fraudulent concealment." *Jenner v. Volvo Cars of N. Am. LLC*, No. 15-CV-6152, 2023 WL 2554697, at *3 (D.N.J. Mar. 17, 2023); *see Snowdy*, 2024 WL 1366446, at *28. "To adequately plead fraudulent concealment for purposes of tolling, a plaintiff must demonstrate: '(1) wrongful concealment by the [defendant], resulting in (2) plaintiff's failure to discover the operative facts forming the basis of [her] cause of action during the limitations period (3) despite the exercise of diligence.'" *Jenner*, 2023 WL 2554697, at *3 (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *14)).

Here, Plaintiffs argue that "the statute of limitations began running in 2019" because Viteri "began to experience the Defect in 2019 when he took his vehicle to a Volkswagen authorized dealership where he was told the fuel pump needed to be replaced." (Opp. at 6 (citing ¶¶ 51-56, 149-151).) Plaintiffs filed their Complaint in August 2024. Thus, accepting Plaintiffs' argument as true that the statute of limitations began running in 2019, Viteri's breach of implied warranty claim would be time-barred. N.J.S.A. 12A:2-725.

Accordingly, the Court will dismiss Viteri's breach of implied warranty claim as barred by the applicable statute of limitations.

## 2.  Montemayor and the Hawaii Subclass

With respect to Montemayor's implied warranty claim, Hawaiian law also applies a four-year statute of limitations that begins to run from the date the cause of action accrues, regardless of the plaintiff's lack of knowledge of the alleged breach. Haw. Rev. Stat. § 490:2-725. The statute further states that "[t]his section does not alter the law on tolling of the statute of limitations . . . ." *Id.* As discussed with respect to Montemayor's Hawaii Deceptive Trade Practices Act claim, "[a]

33

cause of action for a continuing violation is deemed to accrue at any time during the period of the violation." Haw. Rev. Stat. § 480-24. As previously discussed, Montemayor has adequately plead a continuing violation. Thus, for the same reasons Montemayor's state statutory consumer protection act claim survives, so too does Montemayor's implied warranty claim.

### 3. Darrow and the Connecticut Subclass

VWGoA argues that Darrow's implied warranty claims fail for a different reason: lack of privity with VWGoA. (MTD Br. at 37-38.) Plaintiffs argue that privity is not required under Connecticut law, but as VWGoA points out, the case Plaintiffs rely on states only that privity is not required for claims pursuant to the Connecticut Products Liability Act. (*See* Opp. at 38; Reply at 18-19). The statute under which Darrow brings his implied warranty claims, Conn. Gen. Stat. Ann. § 42a-2-314, indeed requires privity for breach of implied warranty claims. *See Finke v. A Better Way Wholesale Autos, Inc.*, No. 136021840, 2017 WL 1015427, at *4 (Conn. Super. Ct. Feb. 15, 2017) ("By contrast, "privity is essential to a warranty claim asserted pursuant to §§ 42a–2–314 and 42a–2–315."). The conclusory allegation in Plaintiffs' Complaint that Darrow had sufficient direct dealings with VWGoA or its agents to establish privity is not, without factual support, enough to allege privity. *See Iqbal*, 556 U.S. at 678-79 (holding complaint subject to dismissal where it lacks "sufficient factual matter" to support its "legal conclusions"). Moreover, Plaintiffs in their Opposition to the instant motion do not appear to dispute VWGoA's argument that Darrow lacks the requisite privity to support his breach of implied warranty claim, instead arguing incorrectly that privity is not required. (Opp. at 38); *see Finke*, 2017 WL 1015427, at *4.

Accordingly, the Court finds that Plaintiffs have failed to plausibly allege the requisite privity of contract existed between Darrow and VWGoA to support his breach of implied warranty claims asserted in Count II of the Complaint, which the Court will dismiss without prejudice.

### 4. <u>Hardy and the Florida Subclass</u>

Similarly, VWGoA argues that Hardy's breach of implied warranty claims must be dismissed for want of privity. Again, this Court agrees. "Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity. . . . the existence of a manufacturer's warranty which runs to the buyer does not in and of itself establish privity." *David v. Am. Suzuki Motor Corp.*, 629 F.Supp. 2d 1309, 1321 (S.D. Fla. 2009); *see also Cerasani v. American Honda Motor Company*, 916 So.2d 843, 846 (Fla. App. 2006) (holding that subsequent purchaser was entitled to protections of express written warranty but could not assert claim for implied warranty because complaint did not allege privity between purchaser plaintiff and defendant Honda); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434–35 (11th Cir. 2009) (holding the "district court properly dismissed the implied warranty claim because plaintiffs did not allege privity between themselves and Ford"); *Gonzalez v. Mazda Motor Corp.*, No. 16-CV-02087-MMC, 2017 WL 3283957, at *6 (N.D. Cal. Aug. 1, 2017) (same, applying Florida law).

Here, the Complaint includes no allegations specific to Hardy concerning the alleged basis of his privity with VWGoA. In their Opposition, Plaintiffs do not address this deficiency, instead arguing—citing cases from 1963 and 1953—that privity is not required. (Opp. at 38.) While that was true until 1988, Florida courts have interpreted *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988) as overruling that standard and returning to a privity requirement for implied warranty claims. *See, e.g., Ashley Square, Ltd. v. Contractors Supply Orlando, Inc.*, 532 So. 2d 710, 711 n.1 (Fla. Dist. Ct. App. 1988) (citing *Kramer*) (noting "cause of action for breach of implied warranty . . . appears to no longer exist in Florida in the absence of privity"); *see also Ocana v. Ford Motor Co.*, 992 So. 2d 319 (Fla. Dist. Ct. App. 2008) (citing *Kramer*) (holding "[u]nder Florida law, privity of contract is required to maintain an action for breach of an implied warranty"); *Mesa v.*

*BMW of North America, LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (citing *Kramer*) (holding "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity").

Accordingly, the Court finds that Plaintiffs have not alleged sufficient facts to establish that Hardy stood in privity of contract with VWGoA as required to maintain his breach of implied warranty claims. Thus, Count V is dismissed without prejudice.

**f.  Unjust Enrichment**

Finally, VWGoA moves to dismiss Plaintiffs' claims for unjust enrichment (Counts XVII and XIX). (MTD Br. at 38-40.) The Court will address the claims of each subclass in turn.

**i.  <u>Connecticut:</u>**

In Counts XVII and XIX, Plaintiffs purport to assert unjust enrichment claims on behalf of themselves and the Connecticut subclass. (Compl., ¶¶ 455, 473.) Under Connecticut law, "unjust enrichment is not a legal claim sounding in either tort or contract—it is an equitable claim for relief." *Tunick v. Tunick*, 217 Conn. App. 106, 113 (2022). It "is not a catchall cause of action to be used when others fail. It is available only in unusual situations when . . . . the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024) (applying Connecticut law). "[T]o adequately plead such a claim, the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Id.* An enforceable contract precludes recovery under a theory of unjust enrichment. *Polverari v. Peatt*, 29 Conn. App. 191, 199, *cert. denied*, 224 Conn. 913 (1992).

Here, Plaintiffs do not specifically plead the elements of an unjust enrichment claim under Connecticut law. Moreover, the cases Plaintiffs cite in the section of their opposition brief

concerning unjust enrichment do not apply Connecticut law. Accordingly, the Court will dismiss Count XIX of the Complaint on behalf of the Connecticut subclass, without prejudice to Plaintiff's ability to amend.

### ii. Florida:

Plaintiffs purport to assert unjust enrichment claims on behalf of themselves and the Florida subclass. (Compl., ¶¶ 455, 473.) VWGoA argues the Florida unjust enrichment claims must be dismissed because they are precluded by the existence of the express warranty. (MTD Br. at 38-39.) Plaintiffs argue they may not have an adequate remedy at law because they allege in the alternative that the terms of the express warranty render it unconscionable, such that the unjust enrichment claim should proceed. (Opp. at 39-40.)

Under Florida law, "unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists." *Alvarez v. Royal Caribbean Cruises, Ltd.,* 905 F.Supp. 2d 1334, 1341 (S.D. Fla. 2012). An unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute. *See, e.g., Zarrella v. Pac. Life Ins. Co.,* 755 F.Supp. 2d 1218, 1227 (S.D. Fla. 2010). As an equitable remedy, an unjust enrichment claim cannot be maintained where a plaintiff has an adequate remedy at law. *Zarrella,* 755 F.Supp. 2d at 1227. The plaintiff must allege it "directly confer[ed a benefit to the defendant" to prevail. *Kopel v. Kopel,* 229 So. 3d 812, 818 (Fla. 2017).

Here, the unjust enrichment claims must fail because there are adequate remedies at law available through Plaintiffs' fraud-based claims and warranty claims. *Speier-Roche v. Volksw Agen Grp. of Am. Inc.,* No. 14-20107-CIV, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014) (barring unjust enrichment claim where express warranty claims could be sustained). "Whether Plaintiffs fail to state other claims at this stage is immaterial to saving the unjust enrichment claim." *Rose,*

2025 WL 815417, at *19 (citing *Licul v. Volkswagen Grp. Of Am.,* 2013 WL 6328734, at *8, 2013 U.S. Dist. LEXIS 171627, at *22 n. 2 (S.D. Fla. Dec. 5, 2013) ("That Plaintiffs' warranty and FDUTPA claims may also prove without merit does not impact whether their unjust enrichment claim should be dismissed as duplicative.")).

Accordingly, to the extent Plaintiffs plead unjust enrichment on behalf of the Florida subclass based on Florida law, Plaintiffs' unjust enrichment claims are dismissed without prejudice.

### iii. **Hawaii:**

In Count XIX, Plaintiffs also purport to assert unjust enrichment claims on behalf of themselves and the Hawaii subclass. (Compl., ¶¶ 455, 473.) It is well settled in Hawaii "that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter." *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, No. 08-00299, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008) (citations omitted); *State Farm Fire & Cas. Co. v. Chung*, 882 F. Supp. 2d 1180, 1192 (D. Haw. 2012) ("As a general rule, '[a]n action for unjust enrichment cannot lie in the face of an express contract.'"). "Thus, '[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity." *Maeda v. Pinnacle Foods Inc.*, 390 F.Supp.3d 1231, 1258 (D. Haw. 2019) (quoting *AAA*, 2008 WL 4907976, at *3). Here, Plaintiffs claim for unjust enrichment is precluded to the extent it is duplicative of the express warranty and fraud claims. Accordingly, Counts XVII and XIX are dismissed without prejudice as to Montemayor and the Hawaii subclass.

### iv. **Missouri:**

Plaintiffs also plead unjust enrichment with respect to the Missouri subclass. (Compl., ¶¶ 455, 473.) Under Missouri law, "implied contract claims [such as unjust enrichment] arise only

where there is no express contract." *Park Ridge Assocs. v. U.M.B. Bank*, 613 S.W.3d 456, 465 (Mo.

Ct. App. 2020) (finding "a plaintiff cannot recover under an equitable theory when [they have]

entered into an express contract for the very subject matter for which [they seek] to recover.").

Here, Plaintiffs' unjust enrichment claims are duplicative of either their express warranty and fraud

claims. Accordingly, Counts XVII and XIX on behalf of the Missouri subclass are dismissed

without prejudice.

### v. **New Jersey:**

"To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish

that the 'defendant received a benefit and that retention of that benefit without payment would be

unjust' and that Plaintiff 'expected remuneration from the defendant at the time it performed or

conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond

its contractual rights.'" *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009

WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539,

554 (1994)); *see also Maniscalco v. Brother Int'l Corp.*, 627 F.Supp.2d 494, 506 (D.N.J. 2009)

("New Jersey law requires a direct relationship between the parties.").

"New Jersey law provides that 'where there is an express contract covering the identical

subject matter of the claim, plaintiff[s] cannot pursue a quasi-contractual claim for unjust

enrichment.'" *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342, 2008 WL 482327,

at *10 (D.N.J. Feb. 19, 2008) (brackets and citations omitted)).) "New Jersey law does not

recognize unjust enrichment as an independent tort cause of action. Thus, where a plaintiff asserts

an unjust enrichment cause of action along with [other] tort claims and there appear to be no

allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust

enrichment claim should be dismissed." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754

(D.N.J. 2013). Here, the Court finds that Plaintiffs' unjust enrichment claims based on tort and quasi contract are duplicative of its fraud and warranty claims under New Jersey law. Thus, Viteri and the New Jersey subclass' unjust enrichment claims are dismissed without prejudice.

Accordingly, VWGoA's motion to dismiss Counts XVII and XIX of Plaintiffs' Complaint is granted.

## V.    **CONCLUSION**

For the reasons set forth above, Defendant VWGoA's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  An accompanying order shall follow.

Dated: May 14, 2025

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE